IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 2, 2021 Session

## COFFEE COUNTY, TENNESSEE v. CARL SPINING ET AL.

Appeal from the Circuit Court for Coffee County
No. 2019-CV-46293       Robert E. Lee Davies, Senior Judge

_____

### No. M2020-01438-COA-R3-CV
_____

This appeal arises from a Rule 12.02(6) dismissal of a legal malpractice action as time-barred under the one-year statute of limitations in Tennessee Code Annotated § 28-3-104(c)(1). In its September 17, 2019 Complaint, the plaintiff county alleged that its trial counsel in an underlying Public Employee Political Freedom Act ("PEPFA") action committed malpractice by failing to object to the jury verdict form in conjunction with agreeing to bifurcate the issue of damage. The defendant attorney and his law firm moved to dismiss the complaint as time-barred under § 28-3-104(c)(1), asserting that the county's claim accrued no later than July 7, 2017—the date on which the court entered the final judgment against the county in the underlying PEPFA case. The county opposed the Motion, asserting that its claim did not accrue until September 18, 2018—the date on which the Court of Appeals issued its opinion in the PEPFA case—because it was on that date the county first reasonably became aware of the alleged malpractice. The trial court granted the Motion to Dismiss on the ground the county knew it had been injured and had sufficient constructive knowledge to trigger accrual of the action more than one year prior to its commencement. This appeal followed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Robert L. Huskey, Manchester, Tennessee, for the appellant, Coffee County, Tennessee.

Gregory Brown, Knoxville, Tennessee, for the appellees, W. Carl Spining and Ortale, Kelley, Herbert & Crawford LLP.

# OPINION

## FACTS AND PROCEDURAL HISTORY

### THE UNDERLYING CASE

In September 2013, Melinda Keeling, a former Coffee County employee, commenced a PEPFA action against the County, seeking both equitable and emotional damages. *See Keeling v. Coffee Cty.*, No. M2017-01809-COA-R3-CV, 2018 WL 4468401 (Tenn. Ct. App. Sept. 18, 2018). Ms. Keeling alleged that she had verbal and written communications with the County mayor about complaints she received from the public concerning her supervisor's lack of availability. *Id.* at \*1. When Ms. Keeling's supervisor learned of her statement, he allegedly retaliated by, *inter alia*, eliminating some of the duties that provided Ms. Keeling with compensatory time off and placing an adverse employment report in her personnel folder. *Id.* In May 2010, the supervisor eliminated Ms. Keeling's position, ostensibly due to a lack of funds. *Id.* In her Complaint, Ms. Keeling sought front pay and back pay associated with her termination. Shortly thereafter, the County retained attorney Carl Spining and his law firm, Ortale, Kelley, Herbert & Crawford (collectively, "Ortale Kelley"), to defend the action.

During a bench conference in the PEPFA action on January 11, 2017, Mr. Spining and Ms. Keeling's counsel, Jerry Gonzalez, discussed how damages would be determined if the jury returned a verdict on the issue of the County's liability. At the conference, Mr. Gonzalez informed the court of his intent to seek only emotional damages during the jury trial and to pursue equitable damages with the court at a later date. Mr. Spining agreed that Ms. Keeling would be permitted to seek equitable damages upon the jury "finding a PEPFA violation." Based on the agreement of the parties, the trial court reserved the issue of equitable damages for a potential bench trial, depending on the jury's verdict. More specifically, the parties agreed to reserve the issues of back pay and benefits to be decided by the trial court after the liability phase. For this reason, and upon the agreement of the parties, the jury form posed only two questions:

1. Has the Plaintiff proven by a preponderance of the evidence all of the elements of the claim for Public Employee Political Freedom Act?
   Yes ___ No ___
   If your answer is "No," go to the end, sign and return the jury verdict form to the Court. If your answer is "Yes," go to the next question.

2. Decide the amount of any damages sustained by Ms. Keeling for pain and suffering, humiliation and/or embarrassment. $ _____

The case proceeded to trial, and after finding that the County committed a PEPFA violation, the jury awarded Ms. Keeling $10,000 in emotional damages. Acting pursuant

to Tennessee Code Annotated § 8-50-603, the trial court increased the award of damages to $30,000. *See* Tenn. Code Ann. § 8-50-603(b) ("If the court of competent jurisdiction determines that a public employer has disciplined, threatened to discipline or otherwise discriminated against an employee because such employee exercised the rights provided by this part, such employee shall be entitled to treble damages plus reasonable attorney fees.").

Following the jury trial, Ms. Keeling moved for various equitable remedies resulting from her termination, including back pay, front pay, and loss of benefits. The County opposed the motion arguing that, because the jury form permitted the jury to award emotional damages without requiring it to determine that Ms. Keeling's termination actually resulted from the County's PEPFA violation, awarding equitable damages based on the jury's determination was inappropriate. For this reason, the County moved for a new trial, contending that the jury verdict, finding only that some PEPFA violation occurred, could not support an award of equitable damages by the court. On May 1, 2017, the court entered an order noting that Ms. Keeling's termination was "a continued act of discrimination" and that, as such, equitable remedies were appropriate. On July 7, 2017, the court awarded Ms. Keeling over $150,000. Later, the court denied the County's Motion for New Trial.

At this point, Robert Huskey, the County Attorney, began reviewing the court file and investigating the decisions made by Mr. Spining during the trial. Specifically, Mr. Huskey went to the clerk's office and obtained a copy of the jury verdict form. After reviewing the jury verdict form, Mr. Huskey concluded that the form reflected exactly what Mr. Spining had represented to him. Shortly thereafter, Mr. Huskey, acting in his capacity as the County Attorney, authorized Mr. Spining to appeal the PEPFA case. Acting on behalf of the County, Mr. Spining filed a timely notice of appeal. The record on appeal was filed with the Court of Appeals on December 5, 2017, and the County filed its brief on February 5, 2018. Ms. Keeling filed her brief on April 6, 2018, in which she cross-appealed the amount of damages awarded. Significantly, the transcript of the bench conference in which Mr. Spining agreed to the stipulation at issue was filed as part of the trial court record on appeal.

On September 18, 2018, this court issued an opinion in which we held that the County waived any objection it may have had to the jury verdict form by agreeing at the January 2017 bench conference to allow for a determination of equitable damages at a later bench trial. *See Keeling*, 2018 WL 4468401, at *15. For this and other reasons, we determined that the trial court did not err in awarding the employee equitable damages. *Id.* We also modified and increased the monetary judgment against the County to $994,000.

THE LEGAL MALPRACTICE ACTION

On September 17, 2019, the County filed the present malpractice action against Mr. Spining and his firm. In its Complaint, the County contended in pertinent part:

> Mr. Spining and his firm had represented Coffee County a number of times prior to the Keeling case and the County had no reason to question his effective professional handling of their litigations. The circumstances of his representation in this case which prompts the County to bring this action are based on their sound belief that his representation of the County in the trial court breached an appropriate Standard of Care resulting in a very bad trial court verdict and that further his failure to apprise the County of pertinent information when [deciding] whether or not to appeal the case compounded the County's damage. His failure to meet the Standard of Care in not objecting to a jury verdict form combined with a stipulation or agreement that Mr. Spining made with the plaintiff's counsel that the County was not aware of, ended up resulting in a huge verdict of nearly half a million dollars ($500,000.00) in the trial court; and further when the County then had to decide whether or not to appeal, Mr. Spining still did not apprise the County of a stipulation he had made with opposing counsel which, in turn, prompted the County to appeal and in turn resulted in the appellate court denying our relief sought and sending the case back for awarding additional damage and ultimately resulting in a payout to Ms. Keeling of nearly a million dollars ($1,000,000.00).

In sum, the County alleged that, when deciding to appeal the July 2017 judgment, it believed that Mr. Spining chose not to object to the jury form as a trial tactic. After this court issued its September 2018 opinion, however, the County contends that it learned, for the first time, about the January 2017 conference in which Mr. Spining agreed to reserve equitable remedies for after the jury verdict. Coffee County did not allege that failure to object to the jury verdict form, by itself, breached the standard of care. Instead, it claimed that it was malpractice for Mr. Spining to fail to object to the form in conjunction with agreeing to bifurcate the issue of damages without first requiring the jury to determine whether the employee's termination was an actual result of the PEPFA violation. According to the County, it would not have appealed had it known of the January 2017 conference stipulation.

Ortale Kelley responded to the Complaint by filing a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss for failure to state a claim, arguing that the one-year statute of limitations for legal malpractice actions accrued on July 7, 2017, when the trial court entered its judgment against the County. Specifically, Ortale Kelley explained that, under the discovery rule, the statute of limitations accrued when (1) the County suffered a legally cognizable, actual injury as a result of Mr. Spining's wrongful conduct, and (2) the

County knew, or in the exercise of reasonable diligence should have known, that the injury was caused by Mr. Spining's wrongful conduct. Ortale Kelley argued that, because the County suffered an actual injury when the judgment was entered in July 2017, and because Mr. Huskey investigated Mr. Spining upon entry of the July 2017 judgment, the County should have known, after due diligence, about the January 2017 bench conference. More specifically, Ortale Kelly contended:

> First, the facts alleged in the Complaint show that the claims for legal malpractice are barred by the one-year statute of limitations because these claims were filed more than two and a half years after the adverse judgment, when the cause of action accrued. Second, the agreement to bifurcate damages was based on both a legal requirement as well as professional judgment, neither of which can serve as a basis for liability.

Following a hearing on the motion, the trial court agreed with Ortale Kelley, concluding that the injury occurred no later than the entry of the final judgment on July 7, 2017. More specifically, the trial court ruled: "In the case at bar[,] if the injury occurred, it accrued no later than the entry of the final judgment on July 7, 2017. Accordingly, the one-year statute of limitation bars the County's claims for relief."

Following the entry of the order granting Ortale Kelley's Motion to Dismiss, the County filed a Motion to Alter, Amend, or Vacate, arguing that, while it knew it had suffered an injury on July 7, 2017, it did not know, nor should it have known, that the injury was a result of Mr. Spining's conduct. Instead, the County contended that, though it exercised reasonable diligence, the County still could not have known that the injury was caused by Mr. Spining before September 2018 because Mr. Spining had concealed facts. This was the first time that the County raised a fraudulent concealment argument. The trial court, however, denied the County's motion. In its conclusion, the court noted that the facts regarding Mr. Spining's agreement to bifurcate damages were referenced in various motions leading up to the entry of final judgment and that the court file contained "all arguments back and forth about whether Mr. Spining had agreed to the verdict form such that he could not object to it after trial."[1] For these reasons, the trial court concluded:

> The Complaint shows that the County had sufficient knowledge to put it on notice of the potential claim against Spining when the County was deciding whether to appeal. Therefore, the County's legal malpractice claim accrued

---

[1] The trial court's order granting Ortale Kelley's Motion to Dismiss and the subsequent order denying the County's Motion to Alter, Amend, or Vacate address distinct issues regarding the discovery rule. Specifically, in the order granting the Motion to Dismiss, the trial court concluded that the County's injury occurred when the final judgment was entered in the underlying PEPFA case. By contrast, the order denying the Motion to Alter, Amend, or Vacate, clarifies the trial court's reasoning regarding when the County knew, or should have known, of the stipulation. For this reason, we refer to both orders collectively throughout this opinion as the trial court's "decision."

on or before July 7, 2017. This matter was not filed until September 17, 2019. Accordingly, the one-year statute of limitations bars the County's claims for relief. The Motion to Alter, Amend, and Vacate is denied.

This appeal followed.

## STANDARD OF REVIEW

The purpose of a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss is to determine whether the pleadings state a claim upon which relief can be granted. As our Supreme Court explained in *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422 (Tenn. 2011):

> A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'"

> In considering a motion to dismiss, courts "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." We review the trial court's legal conclusions regarding the adequacy of the complaint de novo.

*Id.* at 426 (citations omitted).

"Whether a claim is barred by an applicable statute of limitations is a question of law." *Brown v. Erachem Comilog, Inc.*, 231 S.W.3d 918, 921 (Tenn. 2007). "We review questions of law *de novo* with no presumption of correctness." *Burns v. State*, 601 S.W.3d 601, 606 (Tenn. Ct. App. 2019).

## ISSUES

Both parties identify issues on appeal.[2] We have determined the dispositive issue is

---

[2] The County presented the following issues:

    I.      What is the Standard of Review at the trial and appellate level in regard to a Motion to Dismiss a suit under Rule 12.02 (6) of the Tennessee Rules of Civil Procedure?

    II.    What is the Tennessee law in regard to the accrual of a cause of action in cases of legal

whether the trial court erred in granting Ortale Kelley's Rule 12.02(6) Motion to Dismiss on the basis of the statute of limitations.

## ANALYSIS

An action for legal malpractice must be brought within one year from the date the cause of action accrues. *See* Tenn. Code Ann. § 28-4-104(c)(1). "The concept of accrual relates to the date on which the applicable statute of limitations begins to run." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 457 (Tenn. 2012). In legal malpractice actions, the date on which a statute of limitations will "begin to run" is determined by the discovery rule. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Pursuant to the discovery rule, a statute of limitations will accrue once two conditions are met: (1) the plaintiff suffers an "actual injury" as a result of the defendant's allegedly wrongful conduct, and (2) the plaintiff knew "or in the exercise of reasonable diligence should have known that" its injury was caused by the defendant's alleged wrongful conduct. *John Kohl & Co., P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998). In the context of litigation, the entry of a judgment effectively acts as the default point of actual injury. *Story v. Bunstine*, 538 S.W.3d 455, 470–71 (Tenn. 2017).

"The knowledge component of the discovery rule may be established by evidence of actual or constructive knowledge of the injury." *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 545 (Tenn. Ct. App. 2012) (citing *Carvell*, 900 S.W.2d at 29). Thus, our Supreme Court has emphasized that this component does not require the plaintiff to "actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard." *Id.* (citing *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998)). Instead, a plaintiff is deemed to have constructive knowledge of the conduct when he "reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct." *John Kohl & Co., P.C.*, 977 S.W.2d at 532. Though the party asserting a statute-of-limitations defense bears the burden of proving that the statute of limitations has lapsed, *Sherrill v. Souder*, 325 S.W.3d 584, 596 (Tenn. 2010), the burden will shift to a plaintiff asserting lack of constructive knowledge to prove that, despite exercising reasonable diligence, it could not have discovered facts giving rise to a cause of action, *Coffey v. Coffey*, 578 S.W.3d 10, 22 (Tenn. Ct. App. 2018) (citing *Vance v. Schulder*, 547 S.W.2d 927, 930 (Tenn. 1977)).

Ortale Kelley asserts, and the County does not dispute, that the County suffered an

---

malpractice?
III.     Did the Honorable Trial Judge correctly apply the law in regard to the above legal issues?
IV.      Did the Honorable Trial Judge commit reversible error in granting [Defendants'] Motion to Dismiss under Rule 12.02 (6) on the basis of the Statute of Limitations?

actual injury on July 7, 2017, when the final judgment was entered in the PEPFA case. The County, however, argues that it did not have actual or constructive knowledge of facts regarding Mr. Spining's alleged wrongful conduct until this court entered its opinion in the PEPFA case on September 18, 2018. Specifically, the County contends that it exercised reasonable diligence and that, even so, it had no reason to know of Mr. Spining's alleged wrongful conduct.[3] We respectfully disagree.

In making its decision to grant Ortale Kelley's Motion to Dismiss, the trial court specifically found that "the heart of the issue at both the trial and appellate levels was [Mr. Spining's] failure to object to the jury verdict form, which occurred long before entry of the final judgment on July 7, 2017." The trial court also found it significant that the existence of the stipulation regarding the jury verdict form was evident in "several post-trial motions," all filed months before the entry of final judgment. Furthermore, the County contends in its Complaint that it acted with reasonable diligence by obtaining a copy of the jury verdict form shortly after the entry of final judgment on July 7, 2017, yet, as the trial court correctly noted, the same court file contained "all the arguments back and forth about whether Mr. Spining had agreed to the verdict form such that he could not object to it after trial."[4] For these reasons, the trial court concluded:

> The Complaint shows that the County had sufficient knowledge to put it on
> notice of the potential claim against Spining when the County was deciding

---

[3] On appeal, the County also alleges that Mr. Spining concealed facts necessary to put the County on notice of a cause of action for legal malpractice. In the trial court, however, the County did not raise the issue of concealment until it filed its Tenn. R. Civ. P. 59.04 Motion. For this reason, the County has waived consideration of the issue on appeal. *See Irvin v. Green Wise Homes, LLC*, No. M2019-02232-COA-R3-CV, 2021 WL 709782, at *11 (Tenn. Ct. App. Feb. 24, 2021) (concluding that an issue raised for the first time in a motion to alter or amend waived the argument when the defendant asserted new legal theories); *see also Cent. Parking Sys. of Tenn., Inc. v. Nashville Downtown Platinum, LLC*, No. M2010-01990-COA-R3-CV, 2011 WL 1344633, at *4 (Tenn. Ct. App. Apr. 7, 2011) ("A Rule 59 motion should not be used to raise or present new, previously untried or unasserted legal theories or arguments." (quoting *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005))).

[4] In making its decision, the trial court considered facts outside of those contained in the Complaint. Although a court typically converts a motion to dismiss into a motion for summary judgment when it considers facts outside of the complaint, that is not necessary here because the trial court impliedly took judicial notice of such facts from its own court records. *See Stephens v. Home Depot U.S.A., Inc.*, 529 S.W.3d 63, 74 (Tenn. Ct. App. 2016) (explaining that a court "may consider 'items subject to judicial notice . . . without converting the motion into one for summary judgment.'" (quoting *Haynes v. Bass*, No. W2015-01192-COA-R3-CV, 2016 WL 3351365, at *4 (Tenn. Ct. App. June 9, 2016))). Specifically, the trial court took notice of two facts from the PEPFA action: (1) the arguments contained in various prejudgment motions, and (2) the contents of the underlying case record. Tennessee Rule of Evidence 201 "governs . . . judicial notice of adjudicative facts." In interpreting Rule 201, this court has held that a trial judge may take judicial notice of those facts capable of "accurate and ready determination by referencing the court's files." *Counts v. Bryan*, 182 S.W.3d 288, 293 (Tenn. Ct. App. 2005). Significantly, this court has also recognized that it is appropriate to consider not only the record of the present proceeding, but those of earlier proceedings and judgments. *See id.* at 291, 293.

whether to appeal. Therefore, the County's legal malpractice claim accrued on or before July 7, 2017. This matter was not filed until September 17, 2019. Accordingly, the one-year statute of limitations bars the County's claims for relief.

As noted above, a statute of limitations will accrue once two conditions are met: (1) the plaintiff suffers an "actual injury" as a result of the defendant's allegedly wrongful conduct, and (2) the plaintiff knew "or in the exercise of reasonable diligence should have known that" its injury was caused by the defendant's alleged wrongful conduct. *John Kohl & Co., P.C.*, 977 S.W.2d at 532. As for the first factor, the County had actual notice that it suffered an actual injury when the final judgment was entered on July 7, 2017. *See Story*, 538 S.W.3d at 471 (explaining that the discovery rule "allows the trial court's entry of a final judgment to essentially act as a default point of actual injury").

Furthermore, shortly after the final judgment was entered, Mr. Huskey initiated an investigation into Mr. Spining's actions, which included a review of the court files in the underlying PEPFA case. As the trial court noted, the same court files contained not only the jury verdict form but also numerous documents "underscoring" the existence of Mr. Spining's stipulation regarding the jury verdict form, including the prejudgment motions. Thus, its investigation prior to deciding to appeal the PEPFA case provided the County with constructive notice of the stipulation Mr. Spining agreed to at the bench conference. Although the County does not provide the specific date on which Mr. Huskey began the investigation, the Complaint states that the investigation began shortly after the entry of final judgment on July 7, 2017, but before filing its appeal on September 11, 2017. For this reason, even applying the most liberal analysis concerning when the County should have become aware of a potential legal malpractice claim, the statute of limitations accrued, at the latest, before the County filed its Notice of Appeal in the PEPFA case on September 11, 2017. Accordingly, the County "in the exercise of reasonable diligence should have known that" its injury was caused by Mr. Spining's alleged wrongful conduct more than a year before they commenced this action. *See John Kohl & Co., P.C.*, 977 S.W.2d at 532.

Thus, because the County knew "or in the exercise of reasonable diligence should have known that" its injury was caused by Mr. Spining's alleged wrongful conduct more than a year before it commenced this action, we affirm the trial court's decision in all respects.

## CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Coffee County.

_____
FRANK G. CLEMENT JR., P.J., M.S.