EDGAR HENDERSON *v.* LUCY HENDERSON.

(*Nashville.* December Term, 1928.)

Opinion filed, March 16, 1929.

A. B. SHAFER, H. F. ROLESON and HARRY SPEARS, for appellant.

DUNCAN MARTIN and E. G. BELL, for appellee.

MR. JUSTICE COOK delivered the opinion of the Court.

This cause is before us upon *certiorari* to the Court of Appeals. The original bill was filed by Edgar Henderson to recover two lots in Memphis alleged to be inherited from his father, S. H. Henderson. He sought by the bill to recover the property subject to the homestead and dower rights of his father's widow, Lucy Henderson. The property is shown to be worth about $3,000. In her answer, Lucy Henderson denied complainant's right to the property and by cross-bill set up claim to the entire estate. Her claim is based upon statements in the cross-bill filed August 22, 1925, the substance of which is:

On October 10, 1899, S. H. Henderson, the husband of cross-complainant, contracted in writing to purchase the lots from Samuel Slager. On July 10, 1900, Slager, joined by his wife, conveyed the lots by warranty deed to S. H. Henderson and the deed was recorded. At the same time Stanley Henderson, joined by his wife, Lucy Henderson, executed a deed of trust to Slager for the purpose of securing payment of the deferred purchase money notes.

Referring to the record, it appears from the undisputed facts that the deed of trust to Slager was the conveyance of S. H. Henderson, and that his wife, Lucy Henderson, joined for the purpose of cutting off her homestead and dower rights. The notes were signed by S. H. Henderson alone. They were paid and the lien discharged January 16, 1905, sometime before the death of S. H. Henderson. The written contract of sale was between Slager and S. H.

Henderson, Lucy Henderson was not mentioned in the contract, nor in the deed subsequently conveying title to S. H. Henderson in conformity with the contract.

Referring again to the cross-bill, it is stated in substance that when the two lots were purchased it was understood between S. H. Henderson and cross-complainant, who was then his wife, that in consideration of the marital relation and that Lucy Henderson contribute to the payment of the purchase price, they would take title as tenants by the entirety and that the deed should show a joint conveyance necessary to accomplish that purpose.

We quote from the cross-bill:

"And cross-complainant being an uneducated and unlettered colored woman, and wholly unfamiliar with such matters, and trusting to said S. H. Henderson, her husband, and relying upon his acting in good faith and complying with and carrying out said above set forth agreement and understanding, supposed this had been done and that said deed had been drawn in accordance with said agreement and understanding,—and she knew nothing to the contrary, until after the death of S. H. Henderson, when, for the first time, and to her great surprise and astonishment, she learned that, in violation of said agreement and understanding and in breach of the trust and confidence reposed in him by her, said S. H. Henderson had procured said deed to be made to him alone, with no mention therein of cross-complainant and no provision therein for the preservation and protection of her rights in the premises in, and to the ownership of, said lots as the surviving joint tenant by the entireties thereof."

Upon these facts she prayed that the deed from Slager to S. H. Henderson be reformed and brought into con-

formity with the allegations of the cross-bill, and in the alternative that a resulting trust be set up to the extent of her contribution to the purchase price.

*(1)* The answer to the cross-bill specially set up defenses of laches and a plea of the statute of limitations of six years. The ten year statute, Shannon's Code 4473, *Barnes* v. *Barnes*, 8 S. W. (2d), 481, was not relied upon, notwithstanding more than ten years elapsed after the enactment of chapter 26, Acts of 1913, chapter 141, Acts of 1919, which removed the disability of coveture. Not having plead the statute, it cannot inure to the benefit of the defendant to the cross-bill.

Before the cause was tried, the complainant abandoned her claim to a resulting trust and relied alone upon the remedy of reformation. Issues were accordingly made up under the direction of the chancellor and submitted to a jury sworn to try them. The jury found that there was an agreement between cross-complainant and her husband, that they were to purchase the property together, and title should be conveyed to both; and the jury found also that it was understood that cross-complainant should pay a part of the purchase money and that she did pay a substantial part of it upon faith of the agreement referred to.

The chancellor approved the verdict and entered a decree reforming the deed so as to establish between the husband and wife the relation as tenants by the entirety, the effect of which was to confer title upon the surviving wife. The Court of Appeals reversed the decree of the chancellor, holding that the deed could not be reformed on behalf of cross-complainant, who was not a party to it, nor standing in privity to any of the parties.

*(2)* In 23 R. C. L., p. 338, it is said: "Either party to a written contract may have a mutual mistake corrected . . . Courts will not interpose in behalf of persons who are neither parties to the instrument nor claiming any privity."

The agreement relied on by the wife was in parole. At the time she insists it was made, she was living in a two-room house of her own, with her husband. She owned no other property. It does not appear whether her husband owned any or not. He was a minister of the gospel and an inference is sought to be drawn from this circumstance that he had no means of paying for the lots. The cross-complainant testifies that she cooked for workmen at a brickyard and hired out and gave the proceeds to her husband for use in paying for the lots bought from Slager. There is no evidence to indicate the amount of her contributions. She was, at that time, under coveture, the Married Woman's Act of 1913 had not been passed, and the husband was under no obligation to apply these funds to the purchase money. He could as well have used them toward the maintenance of the household, and there is no proof that he did apply the money which his widow says she turned over to him toward payment for the lots. We have, therefore, only the naked fact that the husband told his wife that they would take title to the lots as tenants by the entirety. Her name does not appear in the deed nor in any contract or paper relating to the transaction and she does not stand in privity with any of the parties to the contract.

*(3)* Reformation is a remedy afforded to parties and the privies of parties to written instruments, to rectify them where they fail, through mistake or fraud, to conform with the real agreement. The general rule is that

written contracts contain the entire and correct agreement, and that they supply requisite evidence of what was intended. But a written contract may be opened by a court of equity to let in an equity arising from facts distinct from the sense and construction of the instrument itself. But the remedy is not absolute and it is subject to the provisions of the substantive law. It flows out of and must be in accord with the agreements and obligations of the parties, and of course depends upon whether or not there was a valid contract, for equity only reforms, it will not make a contract. Cross-complainant is not a party to the contract. She seeks to establish the contract by parole and is confronted by the statute of frauds which steps in here. There is no written evidence of the contract upon which she relies, hence no valid contract to which she is a party, or to which she stands in privity with the parties.

*Mullins* v. *Dowlen*, 4 Tenn. App. Cas., 1, was not reviewed in this court. In that case the husband, after taking deed in his own name to the property, inserted his wife's name in the deed and also on the back of the deed and gave it to her with the statement that by that act she became a joint owner with him in the property. The wife had contributed $500 toward payment of the property and the chancellor limited her right to a resulting trust to the extent of her contribution. The Court of Appeals applied the doctrine of reformation and declared the wife a tenant by the entireties.

We approve the rule announced in *Walker* v. *Walker*, 2 App. Cas., 279, and concur in the conclusion of the court in this case. Writ denied.