RUFUS WHITAKER v. CHARLOTTE MOORE et al.

Western Section.    October 23, 1931.

Petition for Certiorari denied by Supreme Court, March 5, 1932.

Exby, Moriarty & Pierce, of Memphis, for appellant.
L. E. Hammons, of Memphis, for appellee.

OWEN, J.  The complainant, Rufus Whitaker, has appealed from a decree of the Chancery Court of Shelby County, wherein his bill was dismissed.  He was taxed with the cost.  The defendants are the sister, brother and nieces of .the complainant's wife, Beulah Whitaker, who died intestate April 16, 1930.  No children were born to complainant and his wife, Beulah.  It appears that both complainant and Beulah had been married prior to their marriage in Fayette County during the year 1923.  The complainant had two sons by his first marriage.

Complainant's bill sought to establish title in him to lots Nos. 42 and 43 of Block B of Lamberts' Park Avenue Subdivision in Memphis.  The lots are located on Edna Street, adjoining each other.

The complainant alleged that a deed was executed November 6, 1924, to the complainant, Rufus Whitaker and his wife Beulah Whitaker, by Wallace Lambert and wife, Edna Lambert, to the two lots above mentioned, that the complainant delivered the deed to his wife with instructions that she have it recorded, that he never saw the deed after delivering it to his wife, and after his wife's death he learned that the deed, recorded from the Lamberts, conveyed the two lots to Beulah Whitaker and complainant's name was omitted.  He charged that his wife altered or had some one to change the deed executed by the Lamberts to the complainant and his wife, that a fraud had been perpetrated on complainant, that Beulah Whitaker, complainant's wife, had obtained title to said two lots by fraud and inequitable means.

The bill alleged that the defendants were claiming title to said lots.  The bill sought to enjoin the defendants from obtaining possession of said lots, and the bill sought to have complainant adjudged to be the legal owner of said lots and to be entitled to the legal ownership or possession thereof.

The consideration paid for said two lots was $400.  They had been improved by the erection of a small building thereon, and at the time of the trial the property was estimated to be worth about $2000.

The defendants filed an answer denying complainant's allegation as to ownership and as to any change or alteration having been made in said deed.  They also filed a cross-bill, making one niece of Beulah Whitaker a defendant to cross-bill and prayed to have said

property sold for partition. The complainant answered the cross-bill. The cause came on to be heard before Chancellor Ketchum, who, by consent of the parties, heard the case on oral testimony. At the conclusion of all the proof and argument of counsel, the Chancellor dismissed complainant's bill. There was a motion for a new trial which was overruled, an appeal was granted, a proper bill of exceptions signed, and the complainant has assigned sixteen errors. These errors raise the following propositions:

(1) There is no evidence to support the judgment.

(2) The court erred in holding that it was the duty of the complainant to show who changed the deed after it was delivered.

(3) The court erred in holding that it was just as probable that the deed was rewritten at the request of one or both of the parties before it was registered.

(4) The court erred in holding that there was no evidence to show that the warranty deed on record was not newly written at the request of Rufus Whitaker and his wife, Beulah Whitaker before delivery and in holding that such proof was necessary in order to show by clear, cogent and convincing proof that the deed was altered after it was delivered.

(5) The court erred in holding that the form of the bill filed in this cause, which does not seek to have the deed reformed, is insufficient upon which to predicate the relief prayed.

(6) The court erred in dismissing plaintiff's bill.

We will dispose of all these assignments together.

Briefly stated it appears that Wallace M. Lambert subdivided a large tract of land into small lots, in the city of Memphis, and he sold these lots to colored people. The two lots together conveyed by the Lamberts had a frontage of fifty feet on Edna Street and they extended back 112½ feet. Edna Street was thirty feet wide.

Wallace M. Lambert entered into a contract with Beulah Whitaker on January 7, 1922, wherein Beulah Whitaker agreed to purchase from Lambert lots Nos. 42 and 43 of Lambert's Park Avenue Sub-division. The contract showed a cash payment of $10; the consideration was $400. The purchaser had the right to take possession of the lots upon the payment of the $10. The purchaser agreed to pay $8 per month until the balance of the unpaid purchase money was paid, which was $390, and the deferred payments were to bear six per cent interest from the date of the contract. The record shows that at the time of the execution of this contract, the complainant and Beulah Whitaker had been living together as husband and wife for twelve years or more, but they were not married. Sometime in 1923, they went to Fayette County and were married by Esquire Boyd. It appears that the marriage records of Fayette County, sometime after 1923, were destroyed by fire when the court house

of that county burned. Shortly after complainant began living with Beulah as her husband, Beulah's father died and her mother, Ellen Fields made her home with complainant and Beulah. Ellen Field's husband was a Federal soldier, and from the time of the death of her husband until the death of Ellen Fields, about 1929, she drew a pension from the Federal Government; at first $30 per month and later on increased to $40 per month.

The complainant testified that he paid all of the consideration for these two lots; that Beulah did not work and earn any money. We are of the opinion that the weight of the evidence shows that Beulah did work for different families, drawing wages up to within a year of her death, and that she and her mother paid the greater portion of the consideration of these two lots. Ellen kept house for complainant and Beulah. The complainant worked for the Memphis Light & Power Company. He was a regular worker and when he worked he drew about $4 per day. There is some proof that complainant spent some of his earnings for intoxicating liquors.

It appears that shortly after the purchase of these lots, a house was erected of four rooms on the same. The complainant claims that he paid for the erection of these four rooms; later two rooms were added and Beulah Whitaker's brother, Jim Fields paid for the erection of these two additional rooms, at a cost of about $70.

The complainant testified that he agreed to pay $10 per month on each lot and did pay that much on each lot per month. The contract only called for $8 per month, with interest, however, the full consideration was paid prior to November 6, 1924, or in the period of about thirty-five months. The complainant's versions of the facts surrounding his claim that he is the owner of these lots as a surviving husband are as follows:

He was asked:

(1) How he happened to get married after he had lived with Beulah for several years? His answer was as follows:

Well, me and her went out there to buy and I didn't intend to live with no woman and not marry her, and I and her come to the conclusion we would marry and she said "we will marry," and I said "all right," and we went on and married. However, it appears that they were given possession of the lots in January, 1922, and didn't marry until sometime during 1923.

It appears that Mr. Lambert usually keeps a carbon copy of the deeds he executes to purchasers of his subdivision. He and his wife testified and introduced a carbon copy of the deed executed by them to Rufus and Beulah Whitaker, November 6, 1924, but have no independent recollection of the transaction.

Judge David Puryear dictated the deed from the Lamberts to the Whitakers. Judge Puryear had died before the instant bill was

filed. Miss Ray Epstein was the stenographer who wrote the deed and also the Notary Public who took the acknowledgment of the Lamberts. It appears that Miss Epstein had moved from Memphis. Her deposition was not taken.

The complainant stated that after he got the deed made jointly to him and his wife he showed it to his son, Robert Whitaker. Complainant testified that Robert came to his house the night after he got the deed. Robert testified that his father told him that the last payment had been made on the place and "he went to the trunk and got the deeds and showed them to me, and he went to the trunk and got them out, and I saw his name and her name on it, and I gave them back to him." The complainant testified that the morning after he had shown the deed to Robert he gave it to Beulah and a $5 bill and ask her to go and have it recorded, that she told him thereafter that she had placed the deed in a bank at the corner of Second & Madison Streets, which bank afterwards failed, and that he had never seen the deed from the day he handed it to his wife.

Mr. T. W. Carter, Deputy Registrar, testified and made as exhibit to his deposition the deed which had been recorded and which conveyed lots 42 and 43 to Beulah Whitaker, which shows that this deed was filed for registration January 6, 1925, and recorded January 19, 1925, and the records of the Register's office show that the deed was delivered to Beulah Whitaker February 19, 1925.

The complainant testified that he had bills for lumber which he had paid for in building the house on said lots, that he had insurance policies and tax receipts. He promised to file these as exhibits to his evidence, but he failed to file or produce any paper, although the defendants were insisting that he bring all his papers to the court room.

It appears that Jim Fields, the brother of Beulah, and her sister, Charlotte, had each purchased lots from Mr. Lambert, in the same subdivision and near where Beulah afterwards purchased, that would indicate why Beulah was interested in purchasing lots near the homes of her brother and sister. There was some attack made about complainant spending his money for intoxicating liquors. The complainant, however, testified that he did not "drink to extreme."

Mr. L. E. Hammons, an attorney, and representing the defendants, testified that Beulah Whitaker and her mother, Ellen Fields, had consulted him about the taxes and the deed to some property in Collierville, that the complainant came to his office with these parties once or twice, and that on a visit, at about the time of the execution of the deed in controversy, the complainant and Beulah asked the witness, Hammons, how they could have the deed to the Lambert property made to Beulah, that the complainant stated that Beulah had paid for it and he wanted her to have the title. They had

no deed with them and Hammons does not know whether a deed had been executed, and was afterwards changed to Beulah or not, but he testifies positively that the complainant stated that he did not want title or his name in the deed. The complainant denies this statement, but admits being in the lawyer's office with Beulah and her mother, and that they talked about tax receipts of the Collierville property.

The insistence is made by the defendants that the complainant was not lawfully married to Beulah, that her husband, George Rogers, was living at the time of the marriage in 1923, and lived for several years thereafter, and that he had not been divorced from Beulah. The defendants proved the marriage of Beulah to George Rogers, but they failed to prove that there had been no divorce. The law presumes that Beulah, at the time of her marriage to complainant, had been divorced from George Rogers. George had been living in Arkansas for several years prior to Beulah's marriage to complainant, and in all probability he had obtained a divorce from her in Arkansas. He had good grounds for a divorce as she had lived unlawfully with complainant for twelve or fourteen years prior to her marriage to complainant.

The Chancellor in dismissing complainant's bill spoke as follows:

I think I am going to have to dismiss this bill, Mr. Exby. Here, now, you want to change a deed as it appears of record. Of course, you recognize the fact that that must be established by clear, cogent and convincing proof. There is nothing in this record to show who changed this deed, if it was delivered as Mr. and Mrs. Lambert say they think it was, nothing to show that it wasn't rewritten and made to convey the property to Beulah Whitaker; nothing to show that the original deed was altered after it was delivered except the fact that the verbiage is the same as in this carbon copy that we have here. "Now, there is just enough difference in the two deeds, as it appears to me, to show that there was not a mere alteration of this paper here. I mean the original of this paper, in that sentence which I ask you to reread the carbon reads 'grantors further covenant and warrant the title to this property and agree to defend same.' Now, that copy says 'The grantors further covenant and warrant to title to said property.' Now, if the words that you refer to had just been changed in the original instrument they would appear 'to title' instead of 'the title' as shown in this carbon. They might have changed it, stricken 'the' with a pen and written the word 'to' over it, but they would have been going out of the way to make bad language. It looks like it is just as probable that the deed was rewritten at the request of one or both of the parties before it was registered. Mr. and Mrs. Lambert testified from the mere fact that they had this carbon in their possession that this was the character

of deed that they gave these parties. There is nothing to show that it wasn't newly written at their request before delivery, and in the absence of that kind of proof I don't think it appears by clear, cogent and convincing proof that the deed was altered after it was delivered and I think the bill must be dismissed.''

Counsel for appellant insists in his able argument and splendid brief, that the lower court placed a greater burden on the complainant than the law requires.

The complainant is insisting that he paid for the lots; that he paid for all improvements; that he paid all taxes; that his wife did not work for any persons or have any employment; that his mother-in-law did not contribute anything to the household expenses; that he had other members of his wife's family living with him; that he gave his wife $30 each pay day, and that he had two pay days per month. The record does not support the complainant's evidence as to these matters.

The complainant insists that his wife, Beulah, changed or altered the deed. If the deed was changed as to names, complainant's name being stricken out, then other language in the deed was changed because the deed recorded uses the word ''grantee,'' wherein the carbon copy uses the word ''grantees.''

It is shown that the stenographer and notary public had moved to New Orleans; the burden was on the complainant. He made no effort to take the stenographer's deposition, or procure her evidence. It is probable that when Judge Puryear dictated a deed to Rufus and Beulah Whitaker from Lambert and wife, that he discovered that the purchaser, according to the written contract, was Beulah Whitaker that Rufus Whitaker's name did not appear in the contract of purchase for the two lots in controversy, that a new deed was thereupon dictated to Beulah, leaving out the name of ''Rufus.'' The Lamberts could have received the wrong carbon bopy.

''It is well settled that to reform a legal instrument, to set up a resulting trust, to have a deed declared a mortgage, and the like, a mere preponderance of the evidence will not suffice, nothing more is meant than that a mere preponderance of evidence on the side of the complainant will not overcome the defendant's evidence, re-enforced by a presumption in favor of the writing or instrument assailed. Stone v. Manning, 103 Tenn., 232, 52 S. W., 990.

''Reformation is the remedy offered to parties to rectify written instruments, which through mistake or fraud, fail to conform to the real agreement.''

The general rule is, ''that written contracts contain the entire and correct agreement and that they supply requisite evidence of what was intended. But a written contract may be open by a court of equity to let in any equity arising from facts distinct from the sense of the

construction of the instrument itself. And the authorities are well settled that to reform a written instrument or to set up a resulting trust that would change the parties to a written instrument, the evidence to overcome the written instrument must be clear, cogent and convincing.'' Sometimes the courts use the word ''irrefragable,'' that the evidence must be clear, cogent and irrefragable. Battle v. Clayborne, 133 Tenn., 301, 180 S. W., 584; Pittsburg Lumber Co. v. Shell, 136 Tenn., 474, 189 S. W. 879; Henderson v. Henderson, 158 Tenn., 452, 14 S. W. (2d), 714; Henderson y. Henderson, 159 Tenn., 126, 17 S. W. (2d), 151.

The learned Chancellor heard the instant case on oral testimony. He had all the witnesses before him, saw their demeanor on the witness stand, observed their conduct while they were testifying, and he concluded that the complainant failed to sustain his bill by the quantum of evidence required under the law.

We have carefully read and weighed the evidence of all the witnesses, and reached the conclusion after careful and thorough consideration of the entire record that the complainant's evidence or proof is not sufficient to sustain his bill and grant him any relief.

It results that we find no error in the decree of the Chancellor. All the assignments of error are overruled, the judgment of the lower court is affirmed. Execution will issue against the complainant for the costs of the cause.

Heiskell and Senter, JJ., concur.