IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 17, 2022 Session

## WILSON BANK & TRUST ET AL. v. CONSOLIDATED UTILITY DISTRICT OF RUTHERFORD COUNTY ET AL.

**Appeal from the Circuit Court for Rutherford County**
No. 70947    Bonita Jo Atwood, Judge

_____

### No. M2021-00167-COA-R3-CV
_____

In 2014, development company KW Group, LLC ("KW") purchased a tract of land located in Rutherford County, Tennessee, from Wilson Bank & Trust ("Wilson Bank"). The land was intended for a subdivision. A previous holder of the land, Mid-Cumberland Development, Inc. ("Mid-Cumberland"), had deeded two lots out of the main tract to Consolidated Utility District of Rutherford County ("CUD") in 2011. Desiring to have a portion of the two lots re-consolidated with the primary tract, KW and Wilson Bank filed suit against CUD and Mid-Cumberland in 2016. The plaintiffs sought reformation and/or rescission of the 2011 deed conveying the lots to CUD and stated causes of action for promissory estoppel and unjust enrichment. Following briefing by the parties, the trial court dismissed all of the plaintiffs' claims with prejudice. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Mary Beth Hagan, Murfreesboro, Tennessee, for the appellants, Wilson Bank & Trust and KW Group, LLC.

Roger W. Hudson, Murfreesboro, Tennessee, for the appellee, Consolidated Utility District of Rutherford County, Tennessee.

### OPINION

This appeal stems from a dispute over a plot of land in Rutherford County, Tennessee. Defendant Mid-Cumberland acquired a tract of land (the "Development") in December of 2008 intending to develop a subdivision. Mid-Cumberland's acquisition was financed by Wilson Bank. The development plan required the installation of a wastewater

treatment system by Defendant CUD. An engineering firm was engaged to determine where the system would be constructed in the Development. The engineering drawings provided that the land needed for the system comprised all of what the parties refer to as "Lot 52" and a portion of what the parties call "Lot 50." CUD and Mid-Cumberland established that Mid-Cumberland would deed to CUD the portion of the Development needed for installation of the wastewater system.

On September 6, 2011, Mid-Cumberland conveyed to CUD the entirety of Lot 52 and Lot 50, notwithstanding the fact that CUD did not need the entirety of Lot 50 for the system. The impetus of the present case is the undisputed fact that CUD received, from Mid-Cumberland, land in excess of what was needed to construct the wastewater system. To effectuate the deal, Wilson Bank executed a release for both Lot 52 and Lot 50, in their entirety, on August 3, 2011.

Mid-Cumberland defaulted on its obligation to Wilson Bank, and Wilson Bank foreclosed on the Development. Wilson Bank acquired the Development via substitute trustees deed dated December 10, 2013. Plaintiff KW became interested in the Development and met with CUD employees on March 10, 2014, to discuss Lots 50 and 52. The parties' stipulated facts provide that during this meeting, "it was discussed that CUD did not need certain portions of the property conveyed to it by Mid Cumberland to install" the wastewater system. The stipulated facts also provide that the two CUD employees present at the meeting "told KW's representatives that a decision would have to be made as to the legal requirements for the transfer of any property in excess of that needed" for the wastewater treatment system.

The record does not show that any further discussion between KW and CUD was held regarding the lots at issue. Soon after the meeting, however, KW purchased the remaining Development land from Wilson Bank. The purchase was financed by Wilson Bank, and a deed of trust securing Wilson Bank's interest was executed on June 27, 2014. Lots 50 and 52 were not included in the conveyance from Wilson Bank to KW, as they had been deeded to CUD nearly three years prior.

On February 24, 2016, Wilson Bank and KW (hereinafter together, "Plaintiffs") filed the instant action in the Circuit Court for Rutherford County (the "trial court"). Plaintiffs alleged that the 2011 deed to CUD from Mid-Cumberland should be either reformed or rescinded altogether based on mutual mistake. Plaintiffs also alleged causes of action for unjust enrichment and promissory estoppel. CUD answered the complaint on May 12, 2016.

Nothing occurred in the case for a long period of time until the trial court set the case for a status conference on March 8, 2019. The conference was reset to November 1, 2019. On November 21, 2019, the trial court entered an agreed order regarding how the case would proceed. The order provides:

1. A Joint Stipulation of Facts by the Parties shall be filed with the Court no later than December 10, 2019.

2. Each party shall be allowed to file a Memorandum of Law in Support of its position in this case. Each party shall submit its Memorandum of Law on the 3rd day of February, 2020. It is the express intent of the Court that the parties submit their Memorandum of Law and provide all other parties with a copy of the same on February 3, 2020.

3. Each party shall then have one opportunity to file a reply brief to the other parties Memorandum of Law in Support of their position. Said reply briefs shall be filed on or before March 15, 2020.

4. The Court shall then make a determination of the issues in this case based upon the written Memorandum of Law filed in support of each party's position or the Court may require that there be oral argument. Further, should the Court determine that additional information is necessary, the Court will inform the parties of the same.

Per the agreed order, the parties filed their agreed stipulated facts on December 10, 2019.[1] CUD and Plaintiffs also filed their respective memoranda of law on February 3, 2020. CUD argued that: 1) any mistake regarding the 2011 deed to CUD was unilateral, as opposed to mutual, and neither rescission nor reformation of the deed was warranted; 2) neither plaintiff had standing because Wilson Bank's interest in Lots 50 and 52 was released and there was no allegation that its loan to Mid-Cumberland was not satisfied by the foreclosure sale, and KW had incurred no damages because it never acquired Lots 50 and 52; 3) there could be no detrimental reliance by KW on the statements of CUD employees Bryant Bradley and David Jones because, per statute, only CUD's board had the authority to convey CUD land. Finally, CUD argued that the Statute of Frauds barred Plaintiffs' claims.

Plaintiffs argued in their brief that Lots 50 and 52 were never intended to be transferred in their entirety to CUD and that equity demanded the excess land be conveyed to KW. Plaintiffs also took issue with CUD's position that KW did not detrimentally rely on statements made at the March 10, 2014 meeting between CUD and KW. Plaintiffs attached to their memorandum of law an affidavit by Steve Knox (the "Knox affidavit"), a representative for KW, which provided generally that KW purchased the development based on the understanding that CUD would convey a portion of the excess land to KW.[2]

---

[1] Although it was named as a defendant, Mid-Cumberland did not participate in the proceedings below and has not filed an appellate brief. The record indicates that Mid-Cumberland was dissolved before this case was initiated in the trial court.

[2] Plaintiffs maintain that they need the excess portions of the Lots back because without them, KW cannot comply with certain requirements of the Rutherford County Planning Department.

In response, CUD filed a motion to strike the Knox affidavit, asserting that the affidavit violated the terms of the November 21, 2019 agreed order. CUD argued that the affidavit violated the order because the Knox affidavit conflicted with the previously filed stipulated facts. The trial court reserved ruling on the motion to strike contingent on whether the court determined, per the terms of the agreed order, that it needed additional facts from the parties.

The parties also filed reply briefs on March 16, 2020. Plaintiffs relied heavily on the disputed Knox affidavit in their reply brief. Nonetheless, the trial court ordered the Knox affidavit stricken on June 19, 2020. The trial court agreed with CUD that the affidavit violated the terms of the November 21, 2019 agreed order. Taking issue with the trial court's interpretation of the agreed order, Plaintiffs filed a motion asking that the case be set for trial. Plaintiffs claimed that the agreed order never contemplated the outright exclusion of disputed facts, and that if the Plaintiffs knew the trial court interpreted the agreed order this way, Plaintiffs never would have signed it. CUD opposed Plaintiffs' motion, asserting that Plaintiffs agreed to the atypical procedure and that Plaintiffs should be prohibited from seeking a trial at that late juncture. The trial court agreed with CUD and entered an order denying Plaintiffs' motion on July 21, 2020. This order provided that the parties, including Plaintiffs' counsel, waived oral argument and that a written ruling based on the stipulated facts was forthcoming.

The trial court's final order was entered January 12, 2021. The trial court concluded that CUD never entered into any contract with KW or Wilson Bank and that neither rescission nor reformation of the 2011 deed was warranted. The trial court also concluded that CUD was not unjustly enriched by the acquisition of Lots 50 and 52 and that Plaintiffs had not shown detrimental reliance on the statements by the CUD employees.

Plaintiffs' case was dismissed with prejudice in its entirety. Plaintiffs filed a timely notice of appeal to this Court.

## ISSUES

Plaintiffs raise the following issues on appeal, which are taken verbatim from their appellate brief:

1.      Should the trial court ruling be reversed because there are a number of necessary, disputed issues of fact that the parties did not have opportunity to present?

2.      Should the trial court ruling be reversed because the standards and procedure for summary judgment, Tennessee Rule of Civil Procedure 56, were not met but the appellants' claims were dismissed as if this were summary judgment?

- 4 -

3.    Should the trial court ruling be reversed because the trial court applied the incorrect legal standards for the causes of action?

## DISCUSSION

This case was decided by the trial court, sitting without a jury, based upon the stipulated facts agreed to by the parties.  We therefore apply the standard of review applicable to bench trials, which is the now familiar standard provided in Tenn. R. App. P. 13(d).  *Cross v. City of Memphis*, 20 S.W.3d 642, 644 (Tenn. 2000).  Under this standard we review the trial court's factual findings *de novo* with a presumption of correctness, unless the preponderance of the evidence is otherwise.  Tenn. R. App. P. 13(d).  The trial court's legal conclusions are reviewed *de novo* with no presumption of correctness. *Nashville Ford Tractor, Inc. v. Great Amer. Ins. Co.*, 194 S.W.3d 415, 425 (Tenn. Ct. App. 2005).

Plaintiffs' first two issues challenge the procedure used by the trial court in disposing of this case.  In particular, Plaintiffs argue that while the trial court "established a procedure that required the trial court to refrain from ruling if additional facts were needed," the trial court determined that additional facts were needed but ruled against Plaintiffs anyway.  Plaintiffs also argue that the trial court "diverged from the Tennessee Rules of Civil Procedure" in a manner that "denied [Plaintiffs] a fair opportunity to be heard."  Plaintiffs' position is problematic because it misconstrues the November 21, 2019 agreed order and because Plaintiffs invited the procedure they now claim was error.

The procedure followed by the trial court was agreed to by the parties, including the Plaintiffs, in the order entered November 21, 2019.  The order provides that the parties would file a joint stipulation of facts and that each party would have the opportunity to brief their arguments both in a principal and reply brief.  Most importantly, the order then provides:

> The Court shall then make a determination of the issues in this case based upon the written Memorand[a] of Law filed in support of each party's position or the Court may require that there be oral argument. ***Further, should the Court determine that additional information is necessary, the Court will inform the parties of the same.***

Emphasis added.

Although Plaintiffs urge that the agreed order "required the trial court to refrain from ruling if additional facts were needed," this belies the plain language of the order. *See State v. Phillips*, 138 S.W.3d 224, 229 (Tenn. Ct. App. 2003) ("A trial court's order and judgments should be construed like any other written instrument." (citing *Gray v. Estate of Gray*, 993 S.W.2d 59, 63–64 (Tenn. Ct. App. 1998))).  The plain language of the

agreed order provides that upon the parties filing their stipulations and briefs, the trial court had the *option* to either: 1) rule on the merits of the claims, or, 2) request additional information from the parties. Nothing in the agreed order or the record at large supports Plaintiffs' contention that the trial court was required to "refrain from ruling if additional facts were needed."

Moreover, Plaintiffs agreed to the above procedure. It is well-settled that "[t]his Court is not required to grant relief 'to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.'" *Glass v. SunTrust Bank*, 523 S.W.3d 61, 79 (Tenn. Ct. App. 2016) (quoting Tenn. R. App. P. 36(a)). Stated differently, "we are not required to grant leave to a party who invited error[.]" *Id.* (quoting *McLemore ex rel. McLemore v. Elizabethton Med. Inv'rs, Ltd. P'ship*, 389 S.W.3d 764, 793 (Tenn. Ct. App. 2012)); *see also Commercial Painting Co. Inc. v. Weitz Co. LLC*, No. W2019-02089-COA-R3-CV, 2022 WL 737468, at \*9 (Tenn. Ct. App. Mar. 11, 2022) (issue regarding jury instruction waived when party "insisted" on particular instruction at trial, then contended on appeal that the jury's verdict was contrary to Tennessee law); *Tomes v. Tomes*, No. M2020-00833-COA-R3-CV, 2021 WL 2808822, at \*3 (Tenn. Ct. App. July 6, 2021) (issues regarding timing of trial court hearing contempt petition waived when wife agreed to hearing ahead of time and had notice that the petition would be heard on the day in question); *PNC Multifamily Cap. Inst. Fund XXVI Ltd. P'ship v. Mabry*, 402 S.W.3d 654, 660 (Tenn. Ct. App. 2012) (issue regarding judicial settlement conference waived when appellant participated in conference and signed agreement during the conference); *State v. Schiefelbein*, 230 S.W.3d 88, 117 (Tenn. Crim. App. 2007) (noting that appellate courts are "loath to place a trial court in error when the party complaining on appeal failed to take corrective action[,]" and that "we are particularly loath to do so where the complaining party affirmatively acquiesced in the trial court's action").

There is no dispute that Plaintiffs agreed to the procedure by which the trial court decided this case. While Plaintiffs now argue that the trial court was bound by the Tennessee Rules of Civil Procedure and erred in its handling of this matter, Plaintiffs acquiesced to the process below. To the extent a procedural error occurred, Plaintiffs invited, if not encouraged, the error.[3]

---

[3] Even if this issue were not waived, we are unconvinced of any error requiring reversal. Trial courts "possess broad discretionary authority to control their dockets and the proceedings in their courts." *Hessmer v. Hessmer*, 138 S.W.3d 901, 904 (Tenn. Ct. App. 2003) (citing *Hodges v. Attorney General*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000)). This authority is "quite broad." *Hodges*, 43 S.W.3d at 921. In the present case, the parties agreed to stipulate to certain facts and allow the court to make a ruling thereon. The record suggests that the purpose of this procedure was to save all parties, including Plaintiffs, the time and expense of discovery. On appeal, Plaintiffs point us to no authority indicating this procedure is error, much less reversible error. Plaintiffs stipulated to certain facts in the trial court and then attempted to dispute those facts with additional affidavits. The trial court was well within its discretion to prohibit such behavior. *See id.*; *see also Bearman v. Camatsos*, 385 S.W.2d 91, 93 (Tenn. 1964) ("When a party makes

Plaintiffs' first two issues on appeal address the procedure employed by the trial court. For all of the reasons addressed above, these arguments are waived and need not be addressed further. *See* Tenn. R. App. P. 36(a).

Plaintiffs also challenge the trial court's decision on the merits of the claims, particularly that the trial court applied incorrect legal standards. Plaintiffs argue that the 2011 deed should be rescinded or reformed based upon mutual mistake, that CUD was unjustly enriched, and that promissory estoppel applies here. We address each of these contentions in turn.

### Mutual mistake regarding the 2011 Deed

Plaintiffs argued in their trial brief that Wilson Bank, CUD, and Mid-Cumberland were all unaware that Mid-Cumberland transferred more property than was necessary for the wastewater system to CUD, and that the 2011 deed in favor of CUD should therefore be rescinded or reformed. In response, CUD asserted, *inter alia*, that Plaintiffs lacked standing on this issue and that if a mistake did occur with regard to the 2011 deed, it was a unilateral mistake on the part of Mid-Cumberland. The trial court ruled as follows:

> Plaintiffs contend they are entitled to a rescission of the parties' contracts, due to a mutual and innocent mistake of fact, without citation to any legal authority. Controlling law states that "[r]escission is a remedy which 'should be exercised sparingly and only when the situation demands such.'" *Richards v. Taylor*, 926 S.W.2d 569, 571 (Tenn. Ct. App. 1996) (quoting *James Cable Partners v. Jamestown*, 818 S.w.2d 338, 343 (Tenn. Ct. App. 1991)). Rescission is "not looked upon lightly [and] is available only under the most demanding circumstances." *Richards*, 926 S.W.2d at 571 (quoting *Robinson v. Brooks*, 577 S.W.2d 07, 208 (Tenn. Ct. App. 1978)).

> The Plaintiffs have the burden of proving they are entitled to such remedy by clear and convincing evidence. As the Plaintiffs have failed to establish a contract, express or implied, ever existed between the Plaintiffs and the Defendant, then the Plaintiffs have insufficient evidence to establish the essential elements required for rescission or reformation.

On appeal, Plaintiffs assert that the trial court erred in not considering the 2011 deed to CUD as the "contract" at issue. Plaintiffs argue that they stand in the shoes of Mid-

---

a concession or adopts a theory by stipulation and his cause of action is determined on this concession or theory, then that party must abide by his decision . . . These stipulations will be rigidly enforced by the courts of this State.").

Cumberland and have standing to sue for rescission and/or reformation of the 2011 deed. CUD disagrees, arguing that "[t]here is no evidence, or legal basis, whatsoever to suggest [Plaintiffs] succeeded to any interest of Mid Cumberland. There is no legal basis to conclude that either of the [Plaintiffs] in this case are in privity with Mid Cumberland regarding the property transfer to CUD." We conclude that CUD has the better argument and that the trial court's dismissal of this claim should be affirmed.

"A court may reform an instrument to correct a mutual mistake." *Trent v. Mountain Com. Bank*, 606 S.W.3d 258, 263 (Tenn. 2020) (citing *Sikora v. Vanderploeg*, 212 S.W.3d 277, 286 (Tenn. Ct. App. 2006)). Reformation of a deed is an equitable remedy available when the complaining party shows, by clear and convincing evidence, that

> (1) the parties reached a prior agreement regarding some aspect of the bargain; (2) they intended the prior agreement to be included in the written contract; (3) the written contract materially differs from the prior agreement; and (4) the variation between the prior agreement and the written contract is not the result of gross negligence on the part of the party seeking reformation.

*Id.*; *see also Sikora*, 212 S.W.3d at 286 ("[C]ourts have the power to alter the terms of a written contract where, at the time it was executed, both parties were operating under a mutual mistake of fact or law regarding a basic assumption underlying the bargain"). Likewise, rescission is an equitable remedy that involves setting aside a transaction if, for example, it was induced by fraud or duress. *Lamons v. Chamberlain*, 909 S.W.2d 795, 800 (Tenn. Ct. App. 1993) (citing *Williamson v. Upchurch*, 768 S.W.2d 265, 271 (Tenn. App. 1988)). Rescission "is not looked upon lightly and will be awarded only under the most demanding circumstances." *Douglas v. Foster*, No. M2000-03177-COA-R3-CV, 2002 WL 83605, at *1 (Tenn. Ct. App. Jan. 22, 2002) (citing *Early v. Street*, 241 S.W.2d 531 (Tenn. 1951)).

Our Supreme Court has held that courts "will not interpose to reform an instrument in behalf of one who is not a party to the instrument nor claiming any privity with a party." *Jackson v. Thompson*, 61 S.W.2d 470, 471 (Tenn. 1933) (citing *Walker v. Walker*, 2 Tenn. App. 279, 288 (1925); *Henderson v. Henderson*, 14 S.W.2d 714 (Tenn. 1929)). Accordingly, the reformation remedy "exists for or against the original parties and their privies, which latter category includes personal representatives, heirs, devisees, legatees, assignees, voluntary grantees, and judgment creditors, or purchasers from them with notice of the facts." 21 Tenn. Prac. Contract Law and Practice § 6:64 (West 2021) (citing *OTA Ltd. P'ship v. Forcenergy, Inc.*, 237 F. Supp. 2d 558 (E.D. Pa. 2002); *Henderson*, 24 S.W.2d 714; *Lally v. Holland*, 31 Tenn. 396 (1852)).

In the case before us, it is undisputed that neither KW nor Wilson Bank were original parties to the 2011 deed. Rather, Lots 50 and 52 were conveyed to CUD by Mid-Cumberland, a separate entity, and Wilson Bank released its interest in those lots in August

of 2011. The question, then, is whether Plaintiffs are "privies" of Mid-Cumberland such that the equitable remedies of reformation and rescission are available to them.

On appeal, Plaintiffs argue that our Supreme Court's decision in *Henderson v. Henderson* supports their position. 14 S.W.2d 714 (Tenn. 1929). In that case, the wife of a deceased land owner sought to reform a deed conveying land to her husband. Although neither the contract nor the deed contained the wife's name, the wife claimed that she and her husband had a separate agreement that she was to co-own the land. While a jury found in the wife's favor, the Court of Appeals reversed, noting that "[c]ourts will not interpose in behalf of persons who are neither parties to the instrument nor claiming any privity." *Id.* at 715. Our Supreme Court agreed, explaining that there was no "contract upon which [the wife] relies; hence no valid contract to which she is a party, or to which she stands in privity with the parties." *Id.*

Our Supreme Court expounded on the issue of privity in the context of deed reformation in *Jackson v. Thompson*, 61 S.W.2d 470 (Tenn. 1933). In that case, the Court considered whether litigants who were not parties to a deed could sue for its reformation based upon privity. The land at issue was conveyed by two parents to one of their daughters, Ms. Eatherly. The petitioners in *Jackson* were the children of the grantors' other daughter, Sarah Jackson. The deed provided that upon Ms. Eatherly's death, the land was to revert "to and belong to the brothers and sister of said *Sarah E. Jackson*, or to their descendants in case either be dead[.]" (emphasis in original). *Id.* at 470. Sarah Jackson's children argued that the deed contained an error in that the name Sarah E. Jackson, as emphasized above, was meant to say "Margaret Eatherly." The children argued that the land was supposed to revert back to them, as the descendants of the sister of Ms. Eatherly, and that the inclusion of Ms. Jackson's name was a mutual mistake. While the trial court ruled in favor of the children, this Court reversed. Reversing this Court, our Supreme Court explained:

> The learned Court of Appeals appears to rest its decree of reversal on the proposition that "the complainants were not parties to the deed in question, and neither was their ancestor, Sarah E. Jackson, a party thereto," quoting the following as controlling: "Courts will not interpose to reform an instrument in behalf of one who is not a party to the instrument nor claiming any privity with a party"-citing Walker v. Walker, 2 Tenn. App. 279, 288; Henderson v. Henderson, 158 Tenn. 452, 456, 14 S.W.(2d) 714; 23 R. C. L. pp. 308, 338, 339; and other authorities.
>
> This is undoubtedly the general rule, but, while it is true that neither the complainants nor their ancestor, Sarah E. Jackson, were original parties to the deed, they are children and heirs of the "sister" who with the "brothers" were the parties to whom the land, by the terms of the deed, was to revert in the contingency of the death of Margaret E. Eatherly without issue, and they

therefore are claiming in privity. Manifestly, if the deed is reformed and the correction of the name is made as of the date of the making of the deed, then all doubt is removed and the complainants are clearly here claiming in privity with a party thereto, to wit, their mother. . . . The rule relied on that "Courts will not interpose [to reform] in behalf of persons who are neither parties to the instrument nor claiming any privity" (23 R. C. L. 339), does not preclude these complainants. They are the real parties in interest claiming privity, according to the allegations of their bill.

*Id.* at 471. Accordingly, in *Jackson*, the parties seeking reformation had standing to pursue that remedy because they were in privity, as legal heirs, with their mother. More recent cases also demonstrate that "a remote grantee" of land is in privity with grantors in the chain of title, such that the remote grantee "has standing to sue for reformation of" a deed. *Minton v. Long*, 19 S.W.3d 231, 240 (Tenn. Ct. App. 1999); *see also Bank of America, N.A. v. Meyer*, No. M2014-01123-COA-R3-CV, 2015 WL 1275394, at *3 (Tenn. Ct. App. Mar. 17, 2015) ("As a result of the acquisition of Countrywide, Bank of America became the successor in interest to the deed of trust at issue in this case. Consequently, we hold that Bank of America has standing to bring this [reformation] action against the Appellant.") These cases dovetail with this Court's definition of "privity," which denotes a "mutual . . . relationship to the same rights of property[,]" or a "'derivative interest founded on or growing out of contract, connection or bond of union between the parties, mutuality of interest.'" *Collier v. Greenbriar Developers, LLC*, 358 S.W.3d 195, 199–200 (Tenn. Ct. App. 2009) (quoting *Fultz v. Fultz*, 175 S.W.2d 315 (Tenn. 1943); *Pers. Loan & Fin. Co. v. Kinnin*, 408 S.W.2d 662 (Tenn. Ct. App. 1966)).

Here, we are unpersuaded that Plaintiffs are in privity with Mid-Cumberland. First, *Henderson* does not support Plaintiffs' argument; rather, we understand that case to weigh against Plaintiffs' position. In this case, Plaintiffs essentially argue that because they are in the same chain of title as Mid-Cumberland with regard to the Development, Plaintiffs are therefore privies of Mid-Cumberland with regard to a completely separate tract of land previously deeded by Mid-Cumberland to a third party, CUD. Not only does *Henderson* not support this contention, but neither do the additional cases cited by Plaintiffs in their principal brief. *See, e.g.*, *King v. Bank of America, N.A.*, No. W2018-01177-COA-R3-CV, 2020 WL 7861368 (Tenn. Ct. App. Dec. 29, 2020) (addressing privity for purposes of res judicata analysis, explaining that, for example, successor creditor had privity of interest and property management agent had privity of contract as to property at issue).

Neither Plaintiff has a relationship with Mid-Cumberland with regard to the disputed lots. KW is particularly attenuated from the original parties and the 2011 conveyance and is not a remote grantee of the lots at issue. Mid-Cumberland deeded Lots 50 and 52 to CUD in 2011, well prior to KW's involvement. At that point, Lots 50 and 52 became part of a separate chain of title from the Development that KW later acquired. KW did not become involved until it purchased the Development in 2014, nearly three years

after Mid-Cumberland conveyed the disputed lots to CUD. Moreover, KW acquired its tract from Wilson Bank after Wilson Bank foreclosed the Development, less Lots 50 and 52, and acquired it from Mid-Cumberland. At the time KW acquired the land from Wilson Bank, Lots 50 and 52 were not a part of the transaction, nor had they been part of the larger Development land for several years. From the outset, KW was aware that Lots 50 and 52 belonged to CUD and were not a part of KW's acquisition. There has never been any allegation that KW was somehow misled or defrauded as to who owned Lots 50 and 52 by the time of KW's purchase in 2014.[4]

Not only was KW not an original party or remote grantee to the deed it seeks to reform or rescind, but also its connection to that instrument is essentially non-existent. Unlike this case, the typical case addressing deed reformation involves a remote grantee of the deed sought to be reformed or a person who received a deed and later discovers the boundary description is incorrect. *See, e.g.*, *Trent*, 606 S.W.3d at 260–62 (purchasers and their lender sought to reform previous deed in chain of title for land purchasers bought, after purchasers discovered wife of previous grantor had been erroneously omitted); *Bartley v. Nunley*, No. E2019-01694-COA-R3-CV, 2020 WL 5110302 (Tenn. Ct. App. Aug. 28, 2020) (personal representative of estate sought to reform deed to decedent, when after the decedent's death there was a family dispute regarding whether the deed granted property to decedent as a tenant in common with his parents); *Elliott v. Robbins*, No. E2017-01440-COA-R3-CV, 2018 WL 3084300 (Tenn. Ct. App. June 21, 2018) (purchaser of land sought to reform deed given to him to include additional disputed acre, where ample evidence established that grantor held out to purchaser that the acre was meant to be included in conveyance). Plaintiffs point us to no cases in which a petitioner has established standing to reform a deed to which the petitioner is not a remote grantee, and which addresses land that was deeded away by a remote grantor to a separate third-party years before. Accordingly, we are unconvinced by KW's argument that it is in privity with Mid-Cumberland as to the 2011 deed.

Wilson Bank's connection to Mid-Cumberland is only slightly less attenuated than that of KW, inasmuch as Wilson Bank only ever had a secured interest in Lots 50 and 52. It is undisputed that Wilson Bank voluntarily released that interest in 2011.[5] Two years later, Wilson Bank foreclosed its loan to Mid-Cumberland and took possession of the remaining Development land, less Lots 50 and 52. Consequently, by the time Wilson Bank

---

[4] Plaintiffs admit that KW met with CUD employees on March 10, 2014 to discuss KW acquiring the excess of Lots 50 and 52 from CUD.

[5] Plaintiffs alleged in their original complaint that the release of Lots 50 and 52 executed by Wilson Bank in August of 2011 was also subject to rescission and/or reformation. This argument is not addressed in Plaintiffs' appellate brief, however, which focuses primarily on the argument that Plaintiffs are in privity with Mid-Cumberland such that the 2011 deed is subject to reformation. Consequently, we do not address or consider whether the release executed by Wilson Bank is subject to reformation or rescission, as this argument seems to have been abandoned. Likewise, although Plaintiffs asked for rescission in their original complaint, Plaintiffs primarily address reformation in their briefing.

acquired the Development land, Lots 50 and 52 undisputedly and lawfully belonged to CUD. Wilson Bank knew this, and the record does not reveal that Wilson Bank ever purported to have a conveyable interest in Lots 50 and 52 in its dealings with KW. Wilson Bank's role in the present dispute is as KW's lender; as such, for the same reasons addressed above with regard to KW, Wilson Bank is not in privity with Mid-Cumberland for purposes of seeking reformation or rescission of the 2011 deed.

Distilled to its essence, Plaintiffs' argument is that they have standing to reform a deed to which they are not remote grantees, and which addresses land that was voluntarily deeded away by a remote grantor to a separate third-party years before. In light of all the foregoing, we are unpersuaded by such a claim. Plaintiffs lack standing to seek reformation and/or rescission of the 2011 deed. The trial court did not err in dismissing this claim.

### *Unjust Enrichment*

Next, Plaintiffs challenge the trial court's dismissal of their unjust enrichment claim, the crux of which is that it is inequitable for CUD to retain land in excess of what it needs to install the wastewater system. With regard to this claim, the trial court found as follows:

> In this case the Plaintiffs cannot satisfy the second or third elements of an unjust enrichment claim, i.e., appreciation by the defendant of the benefit incurred, and acceptance of such benefit under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of the value thereof. In the context of unjust enrichment, the term "appreciate" usually denotes a received benefit. As stated in 43 Am Jr.2d Proof of Facts §523, "[i]f such performance is accepted and used by the other party, he is answerable to the extent he is benefited on an implied promise to pay for the value he has received.["] By purchasing the interest of the Plaintiff, WB, Plaintiff, KW Group, LLC, accepted the benefit of the prior transfer of Lots 50 and 52 to the Defendant, CUD. Plaintiff, KW Group, LLC "appreciated" the transfer of Lots 50 and 52 to the Defendant, CUD, both in terms of acknowledging it and in terms of accepting the transfer of Lots 50 and 52 to Defendant, CUD, for the waste water treatment system. Through the acceptance of the deed and the payment of the purchase price, Defendant, KW Group, LLC accepted the property, with the exclusion of Lots 50 and 52. The Plaintiffs have failed to satisfy the elements of unjust enrichment.

Plaintiffs argue on appeal that the trial court erred by applying the wrong legal standard to this claim, inasmuch as the analysis focuses on KW's receipt of the Development from Wilson Bank as opposed to whether CUD was unjustly enriched by receiving all of Lots 50 and 52. Although we acknowledge that the trial court's analysis is confusing, we agree with the trial court's ultimate conclusion that Plaintiffs failed to establish the essential elements of unjust enrichment. Although we do so on different

grounds, we affirm the ultimate ruling of the trial court dismissing Plaintiffs' unjust enrichment claim. *See 150 4th Ave. N. Tenant, LLC v. Metro. Nashville Bd. of Zoning Appeals*, No. M2019-00732-COA-R3-CV, 2020 WL 1278226, at *9 n.6 (Tenn. Ct. App. Mar. 17, 2020) (citing collected cases) ("The Court of Appeals may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result.").

Unjust enrichment is another equitable remedy, "founded on the principle that a party receiving a benefit desired by him, under circumstances rendering it inequitable to retain it without making compensation, must do so." *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1966). Under the theory of unjust enrichment, a contractual obligation may be imposed "if there is no contract between the parties or the contract has become unenforceable or invalid and the defendant will be unjustly enriched unless the court imposes an obligation." *Id.* Each unjust enrichment claim "must be examined in light of its factual situation and decided according to the essential elements of unjust enrichment." *Bridgeforth v. Jones*, No. M2013-01500-COA-R3-CV, 2015 WL 336376, at *19 (Tenn. Ct. App. Jan. 26, 2015) (citing *B & L Corp. v. Thomas & Thorngren, Inc.*, 917 S.W.2d 674, 680 (Tenn. Ct. App. 1995)).

Our Supreme Court has further explained:

> The elements of an unjust enrichment claim are: 1) "[a] benefit conferred upon the defendant by the plaintiff"; 2) "appreciation by the defendant of such benefit"; and 3) "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Paschall's, Inc.*, 407 S.W.2d at 155. The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust. *Id.*; *Whitehaven Cmty. Baptist Church* [*v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998)]. The plaintiff must further demonstrate that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract. *Paschall's, Inc.*, 407 S.W.2d at 155; *Whitehaven Cmty. Baptist Church*, 973 S.W.2d at 596.

*Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). A plaintiff, however, "need not be in privity with a defendant" to recover for unjust enrichment. *Id.* Nor need a plaintiff "establish that the defendant received a direct benefit from the plaintiff." *Id.* "Rather, a plaintiff may recover for unjust enrichment against a defendant who receives *any* benefit from the plaintiff if the defendant's retention of the benefit would be unjust.*" Id.* (emphasis in original). In *Freeman*, for example, the plaintiff was a company that was an "end-user of food products" which it purchased from supermarkets. *Id.* at 516. The food at issue contained preservatives called "sorbates." *Id.* The plaintiff sued various manufacturers of the sorbates over a price-fixing scheme, alleging, *inter alia*, unjust enrichment. The plaintiff had not purchased the products

directly from the defendants, and the defendants argued "that Freeman must establish that it conferred a direct benefit, rather than an indirect or incidental benefit, upon the defendants." *Id.* at 525. While the Court ultimately ruled against Freeman on a different basis, the Court rejected the defendants' "direct benefit" argument, holding that to establish a claim for unjust enrichment, "a plaintiff need not establish that the defendant received a direct benefit from the plaintiff." *Id.*

Nonetheless, an indirect benefit that is too attenuated from the plaintiff does not support a claim for unjust enrichment. *Coffey v. Coffey*, 578 S.W.3d 10, 26 (Tenn. Ct. App. 2018). In *Coffey*, for example, the widow of a successful businessman sued her deceased husband's father and brother over business dealings the father and brother entered into after the husband died. Against the decedent's wishes, the father eventually sold the decedent's business' stock for forty-five million dollars, yet the widow received none of it. When the widow brought suit against the father and brother, one of her claims was that they were unjustly enriched by the sale. The trial court granted summary judgment to the defendants on that claim, and on appeal the widow maintained that "as the residuary beneficiary of the estate and the family trust, she initially transferred the benefit that [eventually] resulted in the $45,000,000 sale." *Id.* at 26. This Court rejected the widow's argument, however, explaining that "it is too attenuated to say that plaintiff conferred even an indirect benefit on defendants that culminated in . . . [the] purchase of [the business] for $45,000,000." *Id.*

Likewise, Plaintiffs' unjust enrichment claim fails. KW has never conferred any benefit, direct or indirect, on CUD. As addressed at length above, CUD already owned the land at issue for several years before KW became involved. The only dealing between Wilson Bank and CUD that could be considered the conferral of a benefit was Wilson Bank's release of its security interest in Lots 50 and 52 in 2011, so that Mid-Cumberland could deed those lots to CUD. While in some sense this decision could be considered a conferral of an indirect benefit to CUD, the relationship is attenuated. *See Coffey*, 578 S.W.3d at 26. Moreover, the release was a deal executed between Wilson Bank and its borrower, Mid-Cumberland, that Wilson Bank entered into freely and voluntarily and at arm's length. Wilson Bank then failed to complain about the release in any way for several years. Under all of the circumstances, equitable relief is not warranted.

Consequently, we agree with the trial court that Plaintiffs failed to establish a claim for unjust enrichment. The dismissal of this cause of action is affirmed.

### *Promissory Estoppel*

Finally, KW claims that the trial court also erred in dismissing its promissory estoppel claim. This cause of action stems from the March 10, 2014 meeting between KW and CUD employees Bryant Bradley and David Jones. KW argued in the trial court, and now argues on appeal, that KW would not have purchased the Development but for promises made to it by the CUD employees in that meeting. In KW's view, CUD promised

in the 2014 meeting that it would convey a portion of Lots 50 and 52 to KW, without compensation, and that this promise induced KW's purchase of the larger Development from Wilson Bank. The trial court found the following regarding this claim:

> Plaintiffs have failed to show a substantial economic detriment in relying upon Defendant CUD's alleged promise to convey any or all of Lots 50 and 52 to the Plaintiff. Plaintiffs failed to identify evidence that supported its conclusory assertion that it suffered substantial detriment. The Court finds that Defendant has affirmatively negated an essential element of Plaintiffs' promissory estoppel claim and demonstrated that Plaintiffs' evidence is insufficient to establish Plaintiffs' claim for promissory estoppel.

While we take a different approach than the trial court, we agree with the trial court's ultimate conclusion that KW's promissory estoppel claim fails.

Promissory estoppel, also known as "detrimental reliance," is an equitable remedy the application of which is limited to "exceptional cases." *Chavez v. Broadway Elec. Serv. Corp.*, 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007); *Shedd v. Gaylord Entm't Co.*, 118 S.W.3d 695, 700 (Tenn. Ct. App. 2003). "Promissory estoppel has frequently been defined as follows: 'a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" *Chavez*, 245 S.W.3d at 404 (citing *Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn. 1982); *Calabro v. Calabro*, 15 S.W.3d 873, 878 (Tenn. Ct. App. 1999)). The elements of promissory estoppel are "(1) that a promise was made; (2) that the promise was unambiguous and not unenforceably vague; and (3) that they reasonably relied upon the promise to their detriment." *Id.* (citing *Rice v. NN, Inc. Ball & Roller Div.*, 210 S.W.3d 536, 544 (Tenn. Ct. App. 2006)).

The "key element" in a promissory estoppel claim is, "of course, the promise." *Id.* (quoting *Amacher v. Brown–Forman Corp.*, 826 S.W.2d 480, 482 (Tenn. Ct. App. 1991)). While the trial court found that KW's promissory estoppel argument fails because KW could not show its detriment, we conclude that the claim fails for a more fundamental reason, namely, that the statements at issue cannot be fairly characterized as a promise.

In the stipulated facts, the parties agreed to the following regarding CUD's March 10, 2014 meeting with KW:

> 18. There was a meeting between Bryant Bradley and David Jones, employed with CUD, and representatives of KW on March 10, 2014.

> 19. The March 10, 2014 discussion primarily concerned KW's questions as to whether it would be obligated to spend additional funds or take any

additional actions as concerns the decentralized waste water system and drip fields. At that time, it was also discussed that CUD did not need certain portions of the property conveyed to it by Mid Cumberland to install a decentralized waste water system and drip fields.

20. Bryant Bradley and David Jones told KW's representatives that a decision would have to be made as to the legal requirements for the transfer of any property in excess of that needed for the decentralized waste water treatment system, including the primary and reserved drip fields.

While KW characterizes the foregoing as an affirmative promise that the land at issue would be conveyed to KW, we disagree. At most, the employees indicated that CUD was willing to engage in conversation about the excess land. Such representations are too ambiguous, vague, and nonspecific to give rise to promissory estoppel. This is especially true considering that the promise itself is the "key element" in such a claim, and that our Supreme Court has taken a "restrictive view" on promissory estoppel. *Chavez*, 245 S.W.3d at 405, 407. *Compare Chavez*, 245 S.W.3d at 407 (finding no promise was made because statement was unenforceably vague), *with Burgess v. Ford Motor Co.*, No. M2011-00654-COA-R3-CV, 2012 WL 4503188, at \*13 (Tenn. Ct. App. Sept. 28, 2012) (promise sufficient and not unenforceably vague when it "was specific as to the action that would be taken and specific as to its duration"). Here, no actions regarding the transfer of the land were specifically laid out, nor was any timeline ever established. The CUD employees' statements were not promises.[6]

In addition to the substance of its promissory estoppel claim, KW makes the procedural argument that

[t]he record only supports that additional facts are needed. The extent of the loss and whether the loss was reasonably foreseeable to CUD are not facts that were affirmative negated by CUD as the trial court stated. Rather, the absence of these facts should have led the trial court to request further proof on the promissory estoppel claim. As detailed in Section II above, the [Plaintiffs] should be afforded the opportunity to present the disputed issues of fact before the trier of fact.

Plaintiffs again maintain that the trial court somehow erred in determining that it did not need additional facts from the parties and ruling on the merits of this case based upon the parties' stipulations. For all the reasons discussed above, this argument lacks merit.

---

[6] CUD argues in its brief that Bryant Bradley and David Jones lacked authority to bind CUD as to any deals with KW. Although CUD makes a persuasive argument in this regard, we conclude that the agency of the employees is inapposite. Even assuming arguendo that the employees had the authority to enter into a deal with KW, the claim still fails because a promise was never made, and a promise is the key element of the claim.

Plaintiffs agreed to the utilized procedure in this case, and per the November 2019 agreed order, the trial court was not obligated to consider additional facts or argument from Plaintiffs. Nor does the trial court's order suggest it needed additional facts to decide this claim.

The application of promissory estoppel is limited to "exceptional cases where to enforce the statute of frauds would make it an instrument of hardship and oppression, verging on actual fraud." *Shedd*, 118 S.W.3d at 700 (quoting *Baliles v. Cities Serv.*, 578 S.W.2d 621 (Tenn. 1979)). The present case is not exceptional, and the trial court did not err in concluding that KW failed to prove the essential elements of this claim.

We affirm the trial court's dismissal of KW's promissory estoppel claim. We also affirm the trial court's overall ruling dismissing Plaintiffs' case in its entirety.

## CONCLUSION

The judgment of the Circuit Court for Rutherford County is affirmed. Costs of this appeal are assessed to the appellants, KW Group, LLC and Wilson Bank & Trust.

_____
KRISTI M. DAVIS, JUDGE